R. J. Williams Furniture Co. et al. v. McComb Chamber of Commerce et al.*

(Division B. April 25, 1927. Suggestion of Error Overruled May 16, 1927.)

[112 So. 579. No. 26404.]

1. Monopolies. *Merchants' scheme whereby tickets were given to customers for chance on prize held not "trust" or "combination in restraint of trade" (Hemingway's Code, sections 3281-3283).*

   Scheme promoted by merchants and chamber of commerce, whereby merchants purchased tickets which were given to customers on making purchases entitling them to a chance on prize offered by the chamber of commerce, *held* not a "trust" or "combination in restraint of trade," in violation of Code 1906, section 5002 (Hemingway's Code, sections 3281-3283), but rather to constitute a plan calculated to stimulate trade and competition.

2. Gaming. *Lotteries. Scheme whereby merchants gave customers tickets purchased from chamber of commerce entitling customers to chance on prize, held not "lottery" or "gambling device;" "gambling" (Hemingway's Code, sections 1009-1012).*

   Scheme by chamber of commerce and certain merchants, whereby merchants purchased tickets from chamber of commerce which they gave to their customers entitling them to a chance on prize offered by the chamber of commerce, *held* not to constitute a "lottery" or "gambling device," in violation of Code 1906, sections 1277-1280 (Hemingway's Code, sections 1009-1012), in that it lacked one essential element in that customers paid nothing for tickets and stood no chance to lose, since, in order to constitute "gambling," winner must either pay consideration for his chance to win, or without paying anything in advance stand chance to lose or win.

---

*Corpus Juris-Cyc. References: Gaming, 27CJ, p. 975, n. 32; p. 1002, n. 18, 42; p. 1004, n. 56; Lotteries, 38CJ, p. 287, n. 6, 7, 8; p. 289, n. 23; p. 291, n. 49; Monopolies, 41CJ, p. 147, n. 71; As to what constitutes a "lottery" see 17 R. C. L. 1222; 3 R. C. L. Supp. 772; 4 R. C. L. Supp. 1173; 5 R. C. L. Supp. 967; 6 R. C. L. Supp. 1047.

APPEAL from chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Suit by the R. J. Williams Furniture Company and others against the McComb Chamber of Commerce and others. Decree for defendants, and complainants appeal. Affirmed.

*Price, Cassedy & Jackson,* for appellants.

I. This trades day scheme is discriminatory in its operation and as such is in restraint of trade, a monopoly, and against public policy, inimical to the public welfare and therefore subject to injunctive relief. Mississippi Constitution of 1890, sec. 198; chapter 69, Hemingway's Code, as amended by chapter 182, Laws of 1926.

The scheme as outlined in the advertisements and in the rules and regulations provided that only members of the chamber of commerce, and only those members in good standing, could participate in the trades day scheme. This scheme places a penalty on those merchants not members of the association.

The scheme as outlined would hamper those merchants who were not members of the chamber of commerce in the carrying on of their business, and has materially injured them, as revealed by the testimony of T. B. Butler, and would drive competition out of the retail business in the city of McComb. See *Y. & M. V. Railroad Co.* v. *Searles,* 85 Miss. 520, 37 So. 939; 68 L. R. A. 715; *Retail Lumber Dealers Association* v. *State,* 95 Miss. 337, 48 So. 1021.

The form of this attempt at monopoly under the authorities cited, does not matter, but the court should inquire into the intent of the association, which intent is the controlling feature. See *Cumberland Telephone & Telegraph Co.* v. *State,* 54 So. 570; *Barrateria Canning Co.* v. *Joulian,* 80 Miss. 555, 31 So. 961; *Sivley* v. *Cramer,* 105 Miss. 13, 61 So. 653; *McCall* v. *Parsons, May, Oberschmidt Co.,* 107 Miss. 856, 66 So. 274.

As to the awarding of damages to the complainants in a case of this kind, we refer the court to *Delmas* v. *Pascagoula Street Railway & Power Co.*, 103 Miss. 235, 60 So. 210.; *Crescent Oil Co.* v. *State*, 83 So. 680; *Brown* v. *Staple Cotton Co-operative Ass'n*, 96 So. 849. See Monopolies, secs. 19 and 20, 19 R. C. L. 33, 6 R. C. L., p. 786, and authorities there cited; *Addyston Pipe, etc., Co.* v. *U. S.*, 175 U. S. 211, 20 S. Ct. 96, 44 U. S. (L. Ed.) 136; *Kosciusko Oil Mill Co.* v. *Wilson Cotton Oil Co.*, 90 Miss. 551, 43 So. 435, L. R. A. (N. S.) 1053.

An injunction is proper and should have been granted. See Griffith's Miss. Chancery Practice, sec. 435, and cases there cited.

II. This trades day scheme is injurious to the public morals and damages private interests, therefore it is a public nuisance producing a private injury, and subject to abatement by injunction. Griffith's Miss. Chancery Practice, sec. 434, p. 456; 96 Miss. 544, 51 So. 897; 70 Miss. 602, 13 So. 237; 11 L. T. A. 84 and note; 90 Miss 440, 43 So. 475; 42 Fed. Rep. 561; 3 Woods 222; 64 Miss. 483, 1 So. 625; 119 Miss. 500, 81 So. 169. See especially 57 Am. St. Rep. 443; also 71 S. W. 563, 31 Tex. Civ. App. 26; *Green et al.* v. *Lake*, 54 Miss. 540; *Quintini* v. *Board, etc., of Bay St. Louis*, 64 Miss. 483, 1 So. 625, 60 Am. Rep. 62; and the following Mississippi cases; 63 Miss. 373; 69 Miss. 31, 10 So. 448; 26 Miss. 84; 59 Am. Dec. 244; *Wood et al.* v. *Ratliff et al.*, 103 So. 356; *Pearman* v. *Wiggins et al.*, 103 Miss. 4, 60 So. 91.

III. This trades day scheme, gift enterprise, or co-operative advertisement, as it is called, is a lottery or gambling enterprise, and its operation is violative of the laws and therefore should be abated by injunction. Hemingway's Code, sections 1009 to 1118, inclusive. There are only three cases in Mississippi on the question of lotteries, none of which has any particular bearing on the case at bar, but in them are announced some of the

principles of law relative to the operation of a lottery and its definition. Those cases are 96 Miss. 461, 50 So. 495; 69 Miss. 215, 10 So. 577; 48 Miss. 147, 12 Am. R. 367.

For approved definitions of a lottery we refer to 38 C. J. 284, et seq.; also 17 R. C. L. 1208. There are three essential elements before a scheme is said to constitute a lottery. They are: 1. The offering of a prize. 2. The awarding of a prize by chance. 3. The giving of a consideration for an opportunity to win a prize. 38 C. J., p. 289, sec. 2; 17 R. C. L., p. 1222, sec. 10.

The scheme adopted by the Chamber of Commerce of McComb contains all three of these elements. The attention of the court is called to the following citations where similar schemes have been held to be lotteries and in which cases there is contained a full discussion of the question involved: 18 Colo. 321, 32 Pac. 821, 36 Am. St. Rep, 292; 117 Ga. 599, 44 S. E. 320; 97 A. S. R. 177, 62 L. R. A. 93; 92 N. W. 763, 60 L. R. A. 448; 66 Neb. 349, 103 A. S. R. 706; 147 U. S. 449, 13 S. Ct. 409, 37 L. Ed. 237; 88 Ala. 196, 7 So. 338; 16 A. S. R. 36; 112 Ga. 20, 37 S. E. 96, 81 A. S. R. 17; 179 N. Y. 164, 71 N. E. 1058, 106 A. S. R. 586; 91 Ark. 205, 120 S. W. 979, 134 A. S. R. 67, 23 L. R. A. (N. S.) 626, 16 Am. Cas. 506; 74 Md. 565, 22 A. 4, 28 A. E. R. 268, 12 L. R. A. 425; 86 Misc. 255-257, 148 N. Y. S. 375; also 256 S. W. 384, 162 Pac. 1100; 204 Pac. 1030; 204 Pac. 1029; 147 U. S. 449; 13 S. Ct. 409; 37 U. S. (L. Ed.) 237; *Dunn* v. *People,* 40 Ill. 465; *Taylor* v. *Smetten,* L. R. 11, Q. B. Div. 207; *The Colorado case,* 18 Colo. 321, 32 Pac. 821, 76 Am. St. Rep. 292; *Yellowstone Kit* v. *State,* 88 Ala. 196, 7 So. 31, 16 A. S. R. 38 and note; *State* v. *Mumford,* 73 Mo. 647, 39 Am. Rep. 532; *Huddelson* v. *State,* 94 Ind. 426, 48 Am. Rep. 171; *Ballock* v. *State,* 73 Md. 125, Am. St. Rep. 559.

The case most nearly on all fours with the case at bar is that of *Davenport* v. *City of Ottawa,* 54 Kans. 711, 45 Am. St. Rep. 303.

*Williams & Hunt,* for appellees.

I.   Appellants have no standing in court, for the reason that the acts complained of, and which they sought to enjoin, are now entirely complete, as the last drawing was held on December 27, 1926. The rule being "that where an injury is entirely complete, and there be no further continuance of it, an injunction is not available. Rights already lost, and wrongs already perpetrated, are beyond the scope of injunctive relief." *McDaniel* v. *Hurst,* 92 Miss. 197, 41 So. 381, S. C. 88 Miss. 778; *Dixon* v. *Green County,* 76 Miss. 794; 25 So. 665; Ruling Case Law 45, footnote 40; *U. S. Lacassagne* v. *Chapino,* 144 U. S. 119; 12 S. Ct. 659; 36 L. Ed. 368; *Nat, Circle D. I.* v. *Nat. Order D. I.,* 252 Fed. 815, and other authorities there listed.

Appellants' argument in support of this assignment, "that only members of the chamber of commerce, and only those members in good standing could participate in the trades day scheme," is wholly untrue and unfair in fact. However, if appellants' statement was supported by evidence, and it is not, we submit that there would still be nothing in this plan, violative of said section, and in support thereof we cite *Yazoo, etc., Railroad* v. *E. R. Seales,* 85 Miss. 520, 37 So. 939; *Sivley et al.* v. *Cramer,* 105 Miss. 13, 61 So. 653; *Yazoo, etc., R. R. Company* v. *Crawford,* 107 Miss. 355, 65 So. 462; *McCall Company* v. *Parsons-May-Oberschmidt Co.,* 107 Miss. 865, 66 So. 274.

II.   Appellant alleged that "The trades day scheme is injurious to the public morals, and damaging to private interests, and is therefore a public nuisance, producing private injuries, and subject to abatement by injunction."

This presented a question of fact, for the adjudication of the court, and the proof as offered by appellees being so abundant, overwhelming, and convincing, the court

unhesitatingly and immediately adjudged this contro-
verted question of fact adversely to appellants. 32 C. J.,
page 47.

III. This scheme is not a lottery, a gambling enter-
prise, and its operation violative of the laws of the
state. See section 1009, Hemingway's Code, entitled
"Lotteries." 17 R. C. L., page 1222; *Yellow Stone Kit*
v. *State,* 88 Ala. 196, 70 So. 338, 16 A. S. R. 38, and note,
7 L. R. A. 599, and note; *Cross* v. *People,* 18 Colo. 321,
32 Pac. 821, 36 A. S. R. 292, and note, Notes: 10 L. R. A.
60, 3 British Rul. Cas. 984.

The gratuitous distribution of property by lot or
chance does not constitute the offense, if not resorted to
as a device to evade the law, and no consideration is de-
rived directly, or indirectly from the party receiving the
chance. *Yellow Stone Kit* v. *State,* 88 Ala. 196, 7 So. 338,
7 L. R. A. 599, 16 Am. St. Rep. 38; *Long* v. *State,* 74 Md.
565, 22 Atl. 4, 12 L. R. A. 425, 28 Am. St. Rep. 268; *Cross*
v. *People,* 18 Colo. 321, 32 Pac. 821, 36 Am. St. Rep. 292.

All the goods as sold by the retail merchants at Mc-
Comb, either members or non-members of the Chamber
of Commerce, during these trades day projects, were
sold at their market value, and the prizes as given on each
Saturday, and ending on December 27, 1926, were purely
gratuitous, and given solely as an inducement to each
purchaser.

Argued orally by *W. F. Jackson,* for appellants.

ANDERSON, J., delivered the opinion of the court.

The appellants, R. J. Williams Furniture Company
and others, merchants of McComb city, filed their bill in
the chancery court of Pike county, against the appellees,
the McComb Chamber of Commerce and certain mer-
chants of McComb city, members of the chamber of com-

merce, to enjoin the latter from carrying out what is denominated in the bill and the testimony in the case as "trades day" or "profit-sharing campaign," conducted in McComb city under the auspices of the chamber of commerce. There was a hearing before the chancery court on bill, answer, and proofs, resulting in a decree denying the injunction prayed for and dismissing the appellants' bill, from which decree appellants prosecute this appeal.

The bill alleged that the proposed "trades day" or "profit-sharing campaign," conducted under the auspices of the McComb Chamber of Commerce, was violative of the *anti*-trust laws of this state, and also that it was a lottery and a gambling scheme, and therefore illegal, immoral, and inimical to the public welfare. There was little, if any, conflict in the material evidence in the case. The "trades day" or "profit-sharing campaign" was by the chamber of commerce, and the merchants of McComb, who were members of the chamber of commerce, inaugurated to promote trade. It was conducted under the auspices of the chamber of commerce through its board of directors. The chamber of commerce sold to the retail merchants of McComb city, who were its members, tickets in lots of five hundred and one thousand, for which the merchants paid at the rate of seven dollars per thousand. The proceeds of the sale of tickets were paid into the treasury of the chamber of commerce and constituted a fund out of which prizes were given to customers of the retail merchants holding numbers corresponding to the numbers on the prizes drawn. The tickets were perforated in the middle with the same number on each end, the retail merchant selling goods to a customer retaining one end and the customer taking the other. The retail merchants were not permitted to give these tickets away to their customers, but were allowed to give each customer one ticket on either the purchase by the customer of one dollar's worth of goods or the payment by the

customer of one dollar on account. Nor were the merchants allowed to sell the tickets to their customers, and nothing was added to the usual price of the goods sold to them on account of their receiving the tickets. Each customer holding a ticket was entitled to a chance in the drawing of eight prizes offered by the Merchants' Exchange. These prizes consisted of two ten-dollar prizes, two fifteen-dollar prizes, two twenty-five-dollar prizes. and one fifty-dollar and one one hundred-dollar prize. The prizes were paid for by the Merchants' Exchange out of the proceeds of the sale of tickets to the merchants in McComb city, who constituted its members. The "trades day" covered a period of sixteen weeks, from September 11 to December 27, 1926. The prize drawings were held on every Saturday of each week during that period. The customers of the retail merchants, holding the tickets with numbers corresponding to the numbers on the prize tickets drawn at the weekly drawings received the prizes in cash.

Appellants contend that this "trades day" scheme of the McComb Chamber of Commerce and its members constituted a trust or monopoly in the retail mercantile business of McComb city, in that it was a combination between them in restraint of trade, in violation of section 5002, Code of 1906 (sections 3281 to 3283, inclusive, Hemingway's Code).

Appellants' position, we think, is without foundation. We are of the opinion that instead of the "trades day" scheme in question being a trust or combination in restraint of trade, it was rather a plan calculated to stimulate trade, and that instead of having the effect of stifling competition among the retail merchants of McComb city, its effect would be to stimulate such competition; and, furthermore, whatever benefits the retail merchants, who were members of the chamber of commerce, received by virtue of the plan were open to all the retail merchants of the city on becoming members of the Merchants' Ex-

change. Nor do we see anything in the plan that would be detrimental to the public morals or inimical to the public welfare.

Appellants contend that the "trades day" scheme constituted a lottery or a gambling device, in violation of sections 1277 to 1280, inclusive, Code of 1906 (sections 1009 to 1012, inclusive, Hemingway's Code). It will be observed from those statutes that they do not undertake to define what shall constitute a lottery. Resort therefore must be to the common law for that purpose. Three essential elements are necessary to constitute a lottery: (1) The offering of a prize; (2) the awarding of a prize by chance; (3) the giving of a consideration for the opportunity to win the prize; and all three of these elements must concur in order to constitute a lottery. The offering and the award of a prize by chance are not sufficient. There must be added, in order to make it a lottery, that the prize winner give a consideration for the opportunity to win the prize. 38 C. J., p. 289, section 1; 17 R. C. L., section 10.

A lottery is a form of gambling. Under the law, in order to constitute gambling, the winner in the game must either pay a consideration for his chance to win, or he must, without paying anything in advance, stand a chance to lose or win. As stated, the retail merchants of McComb, taking part in this scheme to promote trade gave away to their customers the chances to win the prizes, the customers paying nothing whatever therefor and standing no chance to lose.

*Affirmed.*